In the

# United States Court of Appeals

## For the Seventh Circuit

No. 20-1898

DAVID JONES,

*Plaintiff-Appellant,*

*v.*

RODNEY CUMMINGS, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:19-cv-2684-SEB-MPB — **Sarah Evans Barker**, *Judge.*

ARGUED NOVEMBER 2, 2020 — DECIDED MAY 26, 2021

Before SYKES, *Chief Judge*, and EASTERBROOK and WOOD,
*Circuit Judges*.

WOOD, *Circuit Judge*. David Jones spent over ten years in
prison before this court granted his petition for a writ of ha-
beas corpus under 28 U.S.C. § 2254, on the ground that he was
deprived of his Sixth Amendment right to effective assistance
of counsel. See *Jones v. Zatecky*, 917 F.3d 578 (7th Cir. 2019)
(*Jones III*). After the writ issued and Jones was freed, he filed
an action under 42 U.S.C. § 1983 against the Madison County,

Indiana, prosecutors who had handled his case. He alleged that deputy prosecutors Steve Koester and Daniel Kopp, in their individual capacities, maliciously prosecuted him in violation of his due process rights when they filed an untimely amendment to his charges and secured a conviction, which resulted in his unlawful imprisonment. See Ind. Code § 35-34-1-5 (1982). He also alleged that Madison County Prosecutor Rodney Cummings (an elected official), adopted and followed an official policy of flouting state-law limitations on amendments to charges. He requested $50 million in general damages for his confinement, compensatory damages for past and future physical and emotional injuries, and attorneys' fees.

The district court dismissed the action. It found that Cummings was a state official, and so the suit against him was in substance one against the state itself. Such an action falls outside the scope of section 1983, however, because the state is not a "person" that can be sued under that statute. See *Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989). Jones's suit against Koester and Kopp foundered on the absolute immunity prosecutors enjoy when they are acting as advocates. See, *e.g.*, *Imbler v. Pachtman*, 424 U.S. 409, 430–31 (1976).

We do not doubt that Jones was injured by his ten years of wrongful imprisonment. That does not mean, however, that he has a remedy against any particular actor. In this instance, longstanding principles governing the scope of section 1983 and prosecutorial immunity block him at the threshold. The district court correctly applied this law, and so we affirm.

**I**

At the time Jones's case was pending, Indiana law allowed prosecutors to make substantive amendments to a defendant's charging information up to thirty days before an "omnibus date." Ind. Code § 35-34-1-5 (1982). This rule was neither obscure nor arcane to attorneys in Indiana. In *Haak v. State*, 695 N.E.2d 944 (Ind. 1998), after differentiating amendments of "immaterial defect" and "form" from amendments of "substance," the Indiana Supreme Court held "amendments … of substance" made after the omnibus date "impermissible." 695 N.E.2d at 951.

Jones originally was charged with battery, intimidation, and being a habitual offender. Nine days after the omnibus date passed, deputy prosecutors Koester and Kopp moved to add a charge of criminal confinement. Jones's attorney did not object. The trial court granted the prosecutor's motion without a hearing, and Jones's trial began eight months later. The court later granted two more motions to amend the charges.

A jury convicted Jones of all charges, including the untimely criminal confinement charge. His sentence reveals how significant that amendment was: he received twenty years' imprisonment on the confinement charge alone (enhanced by another 25 years for being a habitual offender) and shorter, concurrent terms of eight years for the original battery charge and three years for the intimidation charge. The court later reduced the battery charge to six months. See *Jones III*, 917 F.3d at 580.

After exhausting his state-court appeals, Jones filed a *pro se* habeas corpus petition in federal court under 28 U.S.C. § 2254. He argued that his attorney's failure to object to the

untimely confinement charge constituted ineffective assis-
tance of counsel in violation of the Sixth Amendment. *Jones III*
at 581. The district court denied the petition, but following our
decision in *Shaw v. Wilson*, 721 F.3d 908 (7th Cir. 2013), we re-
versed, holding that "[a] Sixth Amendment claim of ineffec-
tive assistance of counsel can be predicated on an attorney's
failure to raise a state-law issue in a state-court proceeding."
*Id.*; see *McNary v. Lemke*, 708 F.3d 905, 920 (7th Cir. 2013).

Indiana released Jones in May 2019. One month later he
brought the present section 1983 action. Jones argued that
Prosecutor Cummings had adopted an official policy deliber-
ately to ignore Ind. Code § 35-34-1-5 (1982) and the *Haak* de-
cision. By defying state law, Jones asserted, the prosecutor
could bring untimely amendments and deprive criminal de-
fendants of their rights. The complaint asserted that this pol-
icy resulted in Jones's incarceration and the extreme emo-
tional distress and other physical and mental injuries he ex-
perienced in prison and will continue to experience in the fu-
ture. Citing to a 2019 article in a local newspaper, Jones ar-
gued that deputy prosecutors Koester and Kopp committed
abuse of process and maliciously prosecuted him when they
"investigated and added" the new charge "for the sole pur-
pose to increase his prison time by decades[.]"

The defendants moved to dismiss the action. Cummings
argued that, as a county prosecutor sued in his official capac-
ity, he is a state official of Indiana. In that capacity, he con-
tended, he is not a "person" for purposes of section 1983. Re-
lying on *Imbler*, 424 U.S. 409, Koester and Kopp argued that
their act of filing an amended charge sits comfortably within
the scope of their prosecutorial duties and entitled them to
absolute prosecutorial immunity. The district court agreed.

On appeal, Jones argues that Cummings was functioning as a county official, not a state official, and thus could be reached under section 1983. See *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). The deputies, Jones argues, should receive only a qualified immunity because their conduct was "rogue." Jones also asks this court to create a new rule under which prosecutors are entitled only to qualified immunity if their conduct is "unlawful," even if it is prosecutorial in nature.

## II

We review de novo a district court's decision to grant a 12(b)(6) motion to dismiss a complaint for failure to state a claim. We may affirm the decision on any ground supported by the record. *Divane v. Northwestern University*, 953 F.3d 980, 987 (7th Cir. 2020).

### A. Cummings

Section 1983 imposes liability on "[e]very person who, under color of any … State [law]" violates the federal rights of another. 42 U.S.C. § 1983. The meaning of the word "person" in this passage tracks the same principles that underlie state sovereign immunity under the Eleventh Amendment. *Will*, 491 U.S. at 66–67. The Eleventh Amendment prohibits suits against state officials in their official capacities because "a suit against a state official in his or her official capacity is not a suit against the official but rather a suit against the official's office. As such, it is no different from a suit against the State itself." *Id.* at 71 (citations omitted). The Court in *Will* held that the Congress that passed section 1983 "had no intention to disturb the States' Eleventh Amendment immunity," and so it construed the statute to exclude the states from the class of

those who could be sued under its terms. As applied to Jones's case, that means that we must decide whether Cummings, acting in his official capacity, acts as an arm of the state and is thus outside the scope of the statute, or if he is a local official who can be reached.

In determining whether a person is a state official, courts look to the state laws creating the official's position, as well as the state laws governing the official's actions, state-court decisions, and the financial interdependence between the official and the state. *Regents of Univ. of California v. Doe*, 519 U.S. 425, 429 (1997); *Garcia v. City of Chicago*, 24 F.3d 966, 969 (7th Cir. 1994) ("Whether a particular official is the legal equivalent of the State itself is a question of that State's law."). Applying these cases, we find Cummings to be a state official of Indiana.

Under the Indiana Constitution, prosecutors, like Indiana circuit court judges, are constitutional judicial officers. See Ind. Const. art. 7, § 16; *State ex rel. Stanton v. Murray*, 108 N.E.2d 251, 256 (Ind. 1952). "[C]arved out of the office of the attorney general as it existed at common law[,]" Indiana's prosecutors are elected within their respective judicial circuits and removable only by way of impeachment at the Indiana Supreme Court upon convictions of corruption or other high crimes. *State ex rel. Neeriemer v. Daviess Circuit Court*, 142 N.E.2d 626, 629 (Ind. 1957); Ind. Const. art 7, §§ 13, 16; Ind. Code § 5-8-1-19. They hold the authority to prosecute crimes committed against the state, and they bring charges on behalf of the state, not individual counties. Ind. Code § 33-39-1-5(a); Ind. Code § 35-34-1-1(a). Indiana also pays each prosecutor and the chief deputies' base salary, in addition to providing a retirement fund. Ind. Code §§ 33-39-6-2(a)-(g), 33-39-6-5(d); Ind. Code § 33-39-7-1. Finally, Indiana must "pay the

expenses incurred by a prosecuting attorney from a threat-
ened, pending, or completed action or proceeding that arises
from making, performing, or failing to make or perform a de-
cision, a duty, an obligation, a privilege, or a responsibility of
the prosecuting attorney's office[]", Ind. Code § 33-39-9-4, in
addition to paying attorneys' fees if the state attorney general
does not represent the official but authorizes the official to
employ private counsel. Ind. Code § 33-39-9-2(1). Taken to-
gether, Indiana's laws and statutes indicate that Cummings is
a state official.

Our sister courts routinely have held that prosecutors and
district attorneys in states with comparable laws are state of-
ficials. See *Cady v. Arenac Cnty.*, 574 F.3d 334, 342–44 (6th Cir.
2009) (Eleventh Amendment barred suit against Michigan
county prosecutor); *Nivens v. Gilchrist*, 444 F.3d 237, 249 (4th
Cir. 2006) (North Carolina district attorney was a state official
because he prosecuted criminal actions on the state's behalf
and judgment against him would affect the state's treasury);
*Esteves v. Brock*, 106 F.3d 674, 678 (5th Cir. 1997) (district attor-
neys were state officials because they were "advocates for the
state, prosecuting violations of Texas criminal law"); *Owens v.
Fulton Cnty.*, 877 F.2d 947, 952 (11th Cir. 1989) (a district attor-
ney was a state official because "the prosecution of state of-
fenses" is "a state-created power").

Likewise, this court and the District Court for the Southern
District of Indiana have held that Indiana's county prosecu-
tors are state officials when they are prosecuting criminal
cases. Our description in one of our non-precedential orders
puts it well:

> The office of prosecutor is a creation of the Indiana
> Constitution, see Ind. Const. art. 7, § 16, and state

statutes govern the prosecutor's duties and powers. For example, a prosecutor in Indiana is responsible for prosecuting virtually all criminal prosecutions on behalf of the state. Ind. Code. § 33-14-1-4 (1996). More specifically, the state determines the prosecutor's salary and provides legal representation to a prosecutor sued in a civil action arising out of the prosecutor's performance of official duties, as well as indemnification against any resulting judgments. Ind. Code. §§ 33-14-7-1, 33-2.1-9-1, 33-14-11-1 (1996).

*Srivastava v. Newman*, 12 F. App'x 369, 371 (7th Cir. 2001).

Jones's arguments to the contrary are unavailing. Recognizing this, he asks this court to hold that "unlawful rogue actions of a prosecutor are not 'a decision, a duty, an obligation, a privilege, or a responsibility of the prosecuting attorney's office[]'" and thus his suit against Cummings would not be captured by Ind. Code § 33-39-9-4 (requiring the state to pay expenses incurred by an action against a prosecuting attorney). But any such exception would sweep away the rule—immunity would mean nothing if it existed only when the prosecutor would win on the merits. Jones has sued Cummings for performing his duty to bring charges against criminal defendants. He took that action as an officer of the state, and that, under *Will*, is the end of it.

## B. Koester and Kopp

Similarly, the district court correctly determined that deputy prosecutors Koester and Kopp enjoy absolute prosecutorial immunity for their conduct in filing the untimely charging amendment. In determining whether actions taken by government officials enjoy absolute immunity or qualified

immunity, the Supreme Court applies a "functional approach … which looks to the nature of the function performed, not the identity of the actor who performed it." *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993) (cleaned up).

Applying this approach in *Imbler*, the Court held prosecutors absolutely immune in civil suits for damages under section 1983 for activities "intimately associated with the judicial phase of the criminal process." 424 U.S. at 430. In contrast, prosecutors acting in the role of administrator or investigator are entitled only to qualified immunity. *Burns v. Reed*, 500 U.S. 259, 495–96 (1991); *Buckley*, 509 U.S. at 273–75.

Jones makes a valiant effort to squeeze himself under qualified immunity by alleging that deputy prosecutors Koester and Kopp "investigated and added the confinement charge against Jones for the sole purpose to increase his prison time by decades." He argues that their "deliberate investigative and administrative acts" are not entitled to absolute immunity. He wisely abandons this argument on appeal, but, jumping out of the frying pan and into the fire, he contends that this court should create a new rule that applies qualified immunity to prosecutors engaged in core prosecutorial functions if the prosecutors engaged in "unlawful rogue conduct."

Once again, this argument is a non-starter. A prosecutor's "motives are irrelevant to the absolute immunity question when the actions she is accused of taking are intimately associated with the quasi-judicial phase of the criminal process." *Tobey v. Chibucos*, 890 F.3d 634, 649–50 (7th Cir. 2018). The only question is whether Koester and Kopp's conduct—filing and amending criminal charges against a defendant—are core prosecutorial functions. We need not belabor the point. They are. See, *e.g.*, *Bianchi v. McQueen*, 818 F.3d 309, 316–17 (7th Cir.

2016); *Foreman v. Wadsworth*, 844 F.3d 620, 622–23 (7th Cir. 2016). The district court thus properly found absolute immunity.

## III

Finally, for the first time on appeal all three prosecutors argue that Jones cannot state a claim for relief under section 1983 because his claims all stem from the prosecutors' decision to make an untimely amendment in violation of Indiana law. This alone, they assert, does not trigger any federal claim. Jones responds that the state-law violation resulted in the infringement of his federal due-process rights. This is an argument on the merits, rather than an immunity claim, but we will address it briefly in the interest of completeness.

Section 1983 provides a vehicle by which plaintiffs can sue persons who abuse state power in a way that violates federal law. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 119 (1992). An action under section 1983 "requires a showing that the plaintiff was deprived of a right secured by the Constitution or federal law, [and] … the plaintiff bears the burden of proof on the constitutional deprivation that underlies the claim." *Padula v. Leimbach*, 656 F.3d 595, 600 (7th Cir. 2011) (cleaned up). Essential to any section 1983 action is proof that a defendant violated a plaintiff's federal rights. The statute "does not provide a remedy for abuses that do not violate federal law" nor does it create substantive rights. *Collins*, 503 U.S. at 119; *Levin v. Madigan*, 692 F.3d 607, 611 (7th Cir. 2012).

Section 1983 can be (and often is) used to vindicate a person's federal due-process rights, but at the same time "a constitutional suit is not a way to enforce state law through the back door." *Wozniak v. Adesida*, 932 F.3d 1008, 1011 (7th Cir.

2019). As a result, we must determine whether Jones has presented any allegations that plausibly describe a due-process violation by the prosecutors. See *Ledford v. Sullivan*, 105 F.3d 354, 356 (7th Cir. 1997).

It is common ground by now that when defendants Koester and Kopp filed the untimely amendment, they violated Indiana law. Jones, however, is asserting that this state-law problem led to the deprivation of his Fourteenth Amendment right to due process of law. But a failure to follow state law does not automatically trigger a federal constitutional due-process violation. Indeed, the state-law consequences of the action are largely beside the point. What matters is the content of the plaintiff's argument. Often a state-law problem has no federal implications at all, though in some cases there can be overlapping violations. For example, criminal defendants are entitled to advance notice of the charges they face in order to prepare for trial. *Washington v. Texas*, 388 U.S. 14, 18 (1967). An untimely amendment made so close to the start of trial that it prejudices a defendant's ability to prepare for trial might simultaneously violate state law and the defendant's federal due-process rights.

But Koester and Kopp made their untimely amendment on October 27, 2005, about eight months before Jones's trial began on June 12, 2006, *Jones v. State*, 876 N.E.2d 389 (Ind. Ct. App. 2007) (unpublished table decision). Jones has never alleged the amendment prejudiced his ability to prepare for trial or in any other way affected the fundamental fairness of the procedures the state used. We need not delve into the question whether eight months was long enough to allow Jones to prepare, though the fact that the default rule under the Speedy Trial Act, 18 U.S.C. § 3161, calls for an indictment

within 30 days of arrest and trial 70 days later strongly suggests that there is no generic problem with eight months. See also *United States v. Sorich*, 523 F.3d 702, 715 (7th Cir. 2008); *Denton v. Duckworth*, 873 F.2d 144, 149 (7th Cir. 1989). The only claim Jones makes is that the prosecutors violated state law and that our finding of a constitutional violation in *Jones III* proves the point. But Jones has received his remedy for the ineffectiveness of counsel, and he has not linked the underlying state-law violation to any other federal constitutional right. The district court thus could have dismissed on this ground as well, had it reached the merits.

*       *       *

Although each of the defendants Jones sued had something to do with his lengthy incarceration, the district court properly recognized that the law does not permit him to sue any of them for redress. We therefore AFFIRM the judgment of the district court.