In the

# United States Court of Appeals
### For the Seventh Circuit

No. 24-1952

SUSAN KINDER,

*Plaintiff-Appellant,*

*v.*

MARION COUNTY PROSECUTOR'S OFFICE,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:22-cv-01952-MPB-MJD — **Matthew P. Brookman**, *Judge.*

ARGUED JANUARY 14, 2025 — DECIDED MARCH 26, 2025

Before RIPPLE, BRENNAN, and KOLAR, *Circuit Judges.*

BRENNAN, *Circuit Judge.* Susan Kinder believed her employer, a county prosecutor's office, racially discriminated against her when it reassigned her to a new role. She alleged violations of Title VII and the Equal Protection Clause. But her statutory claim was untimely, and her constitutional claim is barred because the prosecutor's office is not a suable "person" under 42 U.S.C. § 1983. So, we affirm the summary judgment decision against her.

**I**

Kinder is a white woman employed by the Marion County Prosecutor's Office ("MCPO"). She worked there as a receptionist and later was promoted to an advocate position, in which she worked closely with children impacted by crime. After her promotion, Kinder performed the same responsibilities as two other advocates who were black women.

Kinder had repeated run-ins with one of those women, Lydia Richardson, who voiced multiple complaints about Kinder to their managers. Specifically, Richardson alleged Kinder had made racially insensitive remarks to her. The MCPO's chief counsel, Celita Scott, investigated the complaints but found them unsubstantiated. Instead, the employees Scott interviewed said the animosity between Kinder and Richardson went "both ways."

Scott discussed these issues with Ryan Mears, the elected Marion County Prosecutor, who wished to fire both Kinder and Richardson. He thought their inability to set aside "petty disagreements" detracted from the office's mission. Mears had the ultimate authority to hire and fire employees, yet he acquiesced to Scott's suggestion that the two be reassigned to different roles. Kinder's new job lacked some of the positive qualities that Richardson retained in her new role, such as the ability to interact with victims. Ultimately, Kinder saw her transfer as a demotion to a receptionist role. Richardson said she "enjoy[ed]" her new position.

Because of this alleged differential treatment, Kinder filed a racial discrimination claim with the Equal Employment Opportunity Commission. After investigation the EEOC decided not to pursue a civil action against the prosecutor's office. On

April 28, 2022, the agency uploaded a letter to the EEOC portal notifying her she had 90 days after receiving the letter to sue the MCPO in district court. *See* 42 U.S.C. § 2000e-5(f)(1). The letter stated that receipt "generally occurs on the date that you (or your representative) view this document."

Kinder's counsel received an email that day telling him a "new document was added" to the portal, but he could not access the document itself. So, he called the EEOC multiple times to ask about the document. The agency emailed him on June 15, 2022, saying Kinder's "charge was closed" on April 28, and that he "will need to view the Notice of Right to Sue" in the portal. After additional unsuccessful attempts to access the document, he mailed a letter to the EEOC, requesting it send him the right-to-sue letter. In this correspondence, he acknowledged his "client only has 90 days from the date the investigation was closed to file a complaint" in district court.

On July 6, 2022, Kinder's counsel eventually received the right-to-sue letter via email. The letter was still dated April 28, 2022. Counsel requested it be revised to reflect the date of reissuance, but the agency did not provide a new letter. Kinder's counsel did not attempt to clarify with the EEOC whether he was still bound by the April 28 date or the later July 6 date.

Kinder filed a complaint against the MCPO in the Southern District of Indiana on October 4, 2022. This was 159 days after April 28, 111 days after June 15, and 90 days after July 6. The complaint alleged claims under Title VII and the Fourteenth Amendment's Equal Protection Clause.

The MCPO moved for summary judgment. Relying on this court's decision in *Lax v. Mayorkas*, 20 F.4th 1178 (7th Cir. 2021), it argued Kinder's Title VII claim was not timely, as it

was filed outside the 90-day statutory window. Per the prosecutor's office, *Lax* establishes that the clock begins running, at a minimum, as soon as the plaintiff knows the right-to-sue letter has issued—whether or not the plaintiff could access it. *See id.* at 1182–83. As to the equal protection claim, the MCPO argued it was an arm of the state and thus not a "person" subject to suit under 42 U.S.C. § 1983. *See Jones v. Cummings*, 998 F.3d 782, 786 (7th Cir. 2021) (holding an Indiana county prosecutor is a non-suable state official).

The district court granted summary judgment to the MCPO on both claims. It concluded that, under *Lax*, June 15 served as the "operative notice date," yet the complaint was not filed within the 90-day window. The court also found the MCPO to be an arm of the state, immune from § 1983 claims under the Eleventh Amendment. Kinder timely appeals both rulings.[1]

## II

Kinder first contends the 90-day window to file her Title VII claim did not commence until she could access the letter on July 6, 2022. If that is true, her claim was timely. She next argues that, although the prosecutor may be an immune state official, material factors separate the individual from the office. If so, even though Kinder may not sue the county prosecutor, she may sue the office as a municipal entity under § 1983.

Because the case was resolved on summary judgment, we review the district court's decision de novo, viewing the facts

---

[1] The district court had subject-matter jurisdiction under 28 U.S.C. § 1331. We have appellate jurisdiction under 28 U.S.C. § 1291.

through a lens most favorable to Kinder. *Walters v. Pro. Lab. Grp., LLC*, 120 F.4th 546, 548 (7th Cir. 2024). Summary judgment is warranted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

## A

Our court holds that the 90-day Title VII clock begins ticking not when the plaintiff reads the right-to-sue letter, but as soon as the plaintiff is on notice the letter has issued. In *Lax*, the plaintiff received an email alerting him to "the Agency's Final Action" in his case, with his right-to-sue letter attached. 20 F.4th at 1180–81. Through no fault of his own, he was unable to open the letter itself until the following day. *Id.* at 1181. He did not file his lawsuit in district court until 91 days after receiving the email—90 days after he viewed the letter. *Id.* The district court held that the 90-day window "commenced when he received the email, not when he opened the attachment." *Id.* at 1182. It was irrelevant that the plaintiff "was unable—rather than simply unwilling—to read the notice on the day he received it." *Id.*

The MCPO also points to the Eighth Circuit's decision in *McDonald v. St. Louis University*, 109 F.4th 1068 (8th Cir. 2024), which is factually similar to this case. There, the plaintiff received an email that "a new document was added to" her portal. *Id.* at 1070. The email did not describe the document. *Id.* at 1071. Although the notification did not alert her to a final agency decision, as the email did in *Lax*, the document referenced was the right-to-sue letter. *Id.* at 1070. The plaintiff's attorney lost the password to the portal, waiting over a month to ask the EEOC to email him the letter directly. *Id.* The agency

did so, and the plaintiff filed suit within 90 days of reading the letter, but 137 days after the initial portal notification. *Id.*

The court held that the 90-day window opened after the first email's receipt, even though the plaintiff did not know the agency had concluded its investigation on that date. *Id.* at 1071. It reached this conclusion even though the letter, like the one here, said a suit must be filed "within 90 days of [her] receipt of this notice." *Id.* at 1070 (cleaned up).

Taken together, *Lax* and *McDonald* start the countdown— at a minimum—when Kinder had notice of the agency's final decision. There is no dispute that, on June 15, Kinder's counsel was notified the "charge was closed with the EEOC," and that he knew the right-to-sue letter was available in the portal. Under *Lax*, this is enough. *See* 20 F.4th at 1183.

Under the Eighth Circuit's more stringent framework, the clock would have begun running here on April 28, even before notification of a final agency decision. *See McDonald*, 109 F.4th at 1071. But we leave for another day whether to adopt *McDonald* wholesale. Under either date, April 28 or June 15, Kinder's suit was untimely.

Kinder counters that because her right-to-sue letter said she must sue within 90 days of receipt, which "generally occurs" when the document is viewed, her suit was timely. We do not believe, nor did the court in *McDonald*, that this generic language takes the case outside of *Lax*'s general rule. 109 F.4th at 1070.

Instead, if unusual circumstances prevent a plaintiff from reading a letter, the question arises whether the deadline should be equitably tolled. That doctrine provides relief when a claimant is "prevented in some extraordinary way from

filing his complaint in time." *Lax*, 20 F.4th at 1183 (quoting *Threadgill v. Moore U.S.A., Inc.*, 269 F.3d 848, 850 (7th Cir. 2001)). Courts may extend statutory deadlines when "external obstacle[s]" that are "both extraordinary *and* beyond [a party's] control" prevent timely filing. *Lombardo v. United States*, 860 F.3d 547, 552 (7th Cir. 2017) (quoting *Menominee Indian Tribe of Wis. v. United States*, 577 U.S. 250, 256 (2016)). But Kinder did not argue—before the district court or in her opening brief—that her deadline should have been equitably tolled. That argument therefore is not properly before us. *See Bradley v. Village of University Park*, 59 F.4th 887, 897 (7th Cir. 2023) (arguments not presented in the district court or opening brief are waived).

Further, Kinder's counsel did not clarify with the EEOC whether his client was bound by the April 28 date. And, even assuming April 28 was the operative notice date, he had three weeks after reading the right-to-sue letter on July 6 to timely file Kinder's claim. These two facts do not show the "exercise [of] due diligence in preserving" legal rights necessary to warrant equitable tolling. *Lax*, 20 F.4th at 1183 (quoting *Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89, 96 (1990)); *McDonald*, 109 F.4th at 1072. The district court was thus correct to grant summary judgment to the MCPO on Kinder's Title VII claim.

**B**

Next up is Kinder's equal protection claim. The district court granted summary judgment to the MCPO because it concluded the office was an arm of the state, rather than a "person" under 42 U.S.C. § 1983. That statute provides a cause of action against "[e]very person who, under color of" state law, deprives a plaintiff of federal rights. *Id.* States and their officials are not suable "persons" under § 1983, as the

statute did not abrogate states' Eleventh Amendment immunity. *See Jones*, 998 F.3d at 786 (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)).

Courts cannot evaluate whether a local government official acts for the state "in some categorical, 'all or nothing' manner." *McMillian v. Monroe County*, 520 U.S. 781, 785 (1997). We "look to the state laws creating the official's position, as well as the state laws governing the official's actions, state-court decisions, and the financial interdependence between the official and the state." *Jones*, 998 F.3d at 786. The Supreme Court has said it "is of considerable importance" whether "a money judgment against a state instrumentality or official would be enforceable against the State." *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 430 (1997); *see also Parker v. Franklin Cnty. Cmty. Sch. Corp.*, 667 F.3d 910, 927 (7th Cir. 2012) (applying *Regents* in the § 1983 context).

Our court held in *Jones* that an Indiana county prosecutor served as a state official, and was thus not a "person" under § 1983, when "prosecuting criminal cases." 998 F.3d at 786–87. But because the evaluation is not "categorical," *McMillian*, 520 U.S. at 785, *Jones* does not necessarily resolve the issue here: Whether the prosecutor's office in its employment function is also an arm of the state.

An initial matter requires clarification. Kinder argues *Jones* is distinguishable because she has not sued Mears in his "official capacity," but rather the MCPO "as an employer." But even as an employer, the MCPO acts in its "official capacity." *Jones* dealt with a suit against a prosecutor in his official capacity, yet the Supreme Court has held that "an official-capacity suit is … to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *see also Will*, 491 U.S. at 71

(saying that holding otherwise "would allow [plaintiffs] to circumvent congressional intent by a mere pleading device"). Accordingly, the lawsuit in *Jones* was against both the prosecutor in his official capacity and the prosecutor's office as an entity.

Turning back to the question of the "person" who can be sued under § 1983, *Jones* dealt extensively with the Indiana laws creating the prosecutor's office. We provide a brief summary here. Prosecutors are constitutional officials, "removable only by way of impeachment." *Jones*, 998 F.3d at 786 (citing IND. CONST. art. 7, §§ 13, 16). Their offices were "carved out of the office of the attorney general as it existed at common law." *State ex rel. Neeriemer v. Daviess Cir. Ct. of Daviess Cnty.*, 142 N.E.2d 626, 628 (Ind. 1957). Local prosecutors, similar to the attorney general, "exercise certain sovereign powers." *Foster v. Pearcy*, 387 N.E.2d 446, 449 (Ind. 1979).

No state laws govern the MCPO's employment decisions per se. But Indiana law does contain a requirement for counties to finance prosecutors' offices as to employment. Counties must pay the salaries for non-state-salaried prosecutors, "investigators, [and] clerical assistance," as well as other expenses "necessary for the proper discharge of the duties imposed by law" on the elected prosecutors. IND. CODE § 33-39-6-2(h).

Kinder's strongest argument is that there is financial interdependence between some of the office's employees and the county, as only the prosecutor and certain deputy prosecutors are paid by the state. *Id.* §§ 33-39-6-2(a), 33-39-6-5. The remaining employees are paid by the county. But there are two reasons why Kinder's argument does not require us to treat the office as a county instrumentality.

First, the Supreme Court did not find the factor of county funding determinative in *McMillian*, where the county was responsible for paying the sheriff's salary. 520 U.S. at 791. Payment from the county did not "tip the balance" away from the sheriff being a state official because the county did not have "the discretion to refuse payment completely." *Id.* In *McMillian*, Alabama had a funding scheme similar to that here, where the county could not refuse funds below what was "reasonably necessary" to the sheriff's operations. *Id.* at 791–92 (citation omitted). In Indiana, counties may be compelled to remit payment if they are found to have withheld funds below a "necessary" level. *Brown v. State ex rel. Brune*, 359 N.E.2d 608, 609–10 (Ind. Ct. App. 1977). Because Indiana law ensures that counties cannot deny prosecutors' offices necessary funds, counties lack "control over" the offices. *McMillian*, 520 U.S. at 791. Albeit in a different context, the Indiana Supreme Court has held that probation officers, even though paid from county treasuries, qualify as state employees. *Lake Cnty. Bd. of Comm'rs v. State*, 181 N.E.3d 960, 966 (Ind. 2022). These decisions support the conclusion that the MCPO is not excluded from being an arm of the state solely because it receives some county funding.

Second, in *Regents* the Supreme Court instructed that when evaluating financial interdependence, courts must consider whether any money judgment "would be enforceable against the State." 519 U.S. at 430. Many courts, including ours, have placed special emphasis on this factor. *See Parker*, 667 F.3d at 927; *Monroe v. Fort Valley State Univ.*, 93 F.4th 1269, 1279 (11th Cir. 2024); *Kreipke v. Wayne State Univ.*, 807 F.3d 768, 776 (6th Cir. 2015). Indeed, the Eleventh Circuit has recognized that "the presence of a state treasury drain alone may trigger Eleventh Amendment immunity and make

consideration of the other factors unnecessary." *Pellitteri v. Prine*, 776 F.3d 777, 783 (11th Cir. 2015) (quoting *Manders v. Lee*, 338 F.3d 1304, 1327 n.51 (11th Cir. 2003) (en banc)) (analyzing employment-related § 1983 claim against county sheriff).

Indiana law provides for just such a drain from the state treasury. The state will "pay the expenses incurred by" a prosecutor for an action that arises from making or performing "a decision, a duty, an obligation, a privilege, or a responsibility of the prosecuting attorney's office." IND. CODE § 33-39-9-4. These "expenses" include all costs related to litigation—attorney's fees, judgment or settlement amounts, and costs. *Id.* § 33-39-9-2. As the Southern District of Indiana has noted, this indemnification obligation "draws no distinction between" suits "based on prosecution of a criminal case" and those "based on [employment] decisions." *Bibbs v. Newman*, 997 F. Supp. 1174, 1180 (S.D. Ind. 1998). So, even though Marion County pays the salaries of some of the MCPO's employees, a significant financial interdependence exists between that prosecutor's office and the State of Indiana.

After considering the many laws creating the prosecutor's office, as well as the financial interdependence between that office and the state, we conclude that for Kinder's claim, the MCPO is an arm of the state. It is therefore not a suable "person" under § 1983.

We emphasize two additional points. This holding does not, as Kinder argues, "open[] the door for all 91 prosecutors' office[s] in Indiana" to racially discriminate with no recourse available to plaintiffs. Congress may by statute abrogate states' Eleventh Amendment immunity, as it did via Title VII. *See Fitzpatrick v. Bitzer*, 427 U.S. 445, 456–57 (1976). Also, this

decision was made more straightforward by the state's indemnifying county prosecutors for all actions taken within the scope of employment. Based on our review of the caselaw and other state statutes, this indemnification is rare—even for Indiana officials. *See* IND. CODE § 36-1-17-3 (establishing that local government officials may be eligible for reimbursement from the county, not the state, and only when proceedings terminate in the official's favor). We offer no opinion on whether a county prosecutor's office would enjoy immunity from a § 1983 claim alleging discriminatory employment practices absent this broad indemnification obligation.

*          *          *

Kinder's Title VII claim was untimely, and the Marion County Prosecutor's Office is not a suable "person" under 42 U.S.C. § 1983 on her employment claim. We therefore AFFIRM the district court's summary judgment decision.